## Case No. 15,964.

UNITED STATES v. ONE THOUSAND THREE HUNDRED AND SIXTY-THREE BAGS OF MERCHANDISE.

[2 Spr. 85;[1] 25 Law. Rep. 600.]

District Court, D. Massachusetts. Aug., 1863.

NEW TRIAL — CUSTOMS LAWS — EXAMINATION OF GOODS.

1. Grounds upon which a court of common law may grant a new trial.

2. It seems that the proper construction of the act of 1799, c. 22, § 67 (1 Stat. 677), requires that each package shall be examined by a custom-house officer in the presence of two merchants, and that, to constitute such presence, the merchants must be in such a situation as to be able to witness such examination, and to see and testify to a part at least of the contents of each package.

R. H. Dana, Jr., U. S. Dist. Atty., and T. K. Lothrop, Asst. U. S. Dist. Atty.
C. L. Woodbury, for claimants.

SPRAGUE, District Judge. In this case there has been a verdict for the United States, and the claimants of the property move for a new trial.

The question how far the power of the court extends in granting new trials has been elaborately discussed by the counsel for the United States.

It is admitted that if the verdict rests on wrong instructions, or if, with correct instructions, it rests on a mistake or disregard of the law by the jury, or if it is the result of bias, or mistake of facts,—in short, if the verdict is not the result of the judgment of the jury on the facts in evidence with a correct application of the law,—the court may order a new trial; but it is contended that if the result is a verdict of the jury, in the sense of law,—that is, a result of the judgment of the jury upon a correct application of the law,—the verdict must stand; and it is urged that to grant a new trial for other reasons is to infringe upon the constitutional right of trial by jury.

It is to be remembered that a new trial does not remove the cause from the jury to the court, but from one jury to another. The question is not which tribunal, the court or the jury, shall decide the case, but how far a verdict of one jury is conclusive against a motion for a re-trial before another jury.

The idea that the constitution renders a first verdict sacred, so as to interfere with the allowance of a second trial, is of recent origin. Formerly, in Massachusetts, the losing party could have a second trial as of right by merely claiming an appeal. If the second verdict was the same as the first, it was conclusive unless the court, in its discretion, should see fit to set it aside. If the result of the second trial was different from that of the first, the losing party had a right, by a process of review, to have another trial. The losing party in this third

---

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

trial, having had two verdicts against him, was concluded thereby, unless the court should grant him a new trial. By this system it was not thought safe to rely upon the finding of a single jury. A party could claim a re-trial as matter of right until two verdicts had gone against him, and even then the court had the power to grant another trial if in their discretion they should deem it proper. This system commenced at an early period, and was in operation for a long time. It continued for some years after Maine became a separate state. I had there some agency in bringing about a change.

The first step was to take away the right of a third trial, that is, the process of review. Those in favor of this change did not contend that the constitutional right to trial by jury was infringed or impaired by allowing a second and third trial. That idea was never suggested. Their arguments rested wholly upon expediency. It was insisted that such protracted litigation was unnecessary, and created great expense, vexation, and danger of perjury. No one contended that a single verdict ought to be conclusive. On the contrary, the advocates for the abrogation of the old system urged that the known power of the court to grant new trials would be a sufficient safeguard against erroneous and improper verdicts, and that it should be left to an impartial tribunal to determine whether justice required a re-investigation, rather than to the will of a biased, perhaps heated and vindictive party.

The constitution secures a trial by jury, without defining what that trial is. We are left to the common law to learn what it is that is secured. Now the trial by jury was, when the constitution was adopted, and for generations before that time had been, here and in England, a trial of an issue of fact by twelve men, under the direction and superintendence of the court. This direction and superintendence was an essential part of the trial. The question really is, what is the extent of the superintending power? The court was undoubtedly authorized to exercise a supervision over verdicts, and to sustain them or set them aside. This power was given for the furtherance of justice. But the law did not specify the cases in which verdicts should be set aside and new trials granted. That was left to the judgment of the court. It rested wholly in the discretion of the judge to determine under what circumstances and for what causes a verdict should be set aside. And his decision was final, being subject to no revision by appeal or writ of error. Yet, as in other cases of discretion, it was not intended to be an arbitrary or capricious, but a judicial discretion, to be exercised for good reasons. But each judge must determine for himself the sufficiency of the reasons. He should indeed welcome all the light that could be thrown upon his path, and carefully examine the decisions of his predecessors, to see how far the practice of the courts has gone, and what rules or principles could be deduced therefrom. These rules could not indeed bind his own judgment; but, having been practically adopted by enlightened jurists, they would, to some extent, aid and influence the formation of his own opinions. Prior decisions were examined, not because they could make or authoritatively declare the law prescribing the circumstances under which a new trial should be granted, but as tending to show how a discretionary power could be most wisely exercised.

It appears, then, that at the time of the adoption of the constitution, it was a part of the system of trial by jury in civil causes that the court might, in its discretion, set aside a verdict. This power had for a long time been frequently and freely exercised without question; and if a judge does not go further in granting new trials than the known practice of the courts at the time of the adoption of the constitution he cannot be justly charged with encroaching upon the trial by jury. On the contrary, he may be said to uphold it, because each party, the losing as well as the winning, has a right to the legitimate trial by jury, with all its safeguards, as understood when the constitution was adopted. As to the practice in our own courts, we have no reports of decisions prior to the Revolution, but it is known that they were founded upon and followed those of the common-law courts in England. Mr. Dane, who was an eminent public man and a learned lawyer during the Revolution and at the time of the adoption of the constitution, lays it down without qualification in his great work on American Law, that the granting of new trials rests in the discretion of the court, and that it is a maxim that a new trial should be granted when justice requires it. He refers to some of the English decisions to show in what cases this power had been exercised. Those decisions are very numerous, and show that the court had little hesitation in granting a second trial where the result of the first had not been satisfactory. The mere certificate of the judge who tried the case that he was not satisfied with the verdict, was sometimes sufficient cause for setting it aside. I shall not attempt an enumeration of the English decisions, but refer to one which took place just previous to our Revolution, and which more than covers the case now before me. It is Norris v. Freeman, 3 Wils. 38, decided in 1769.

The question for the jury in that case was whether the signature to a release was genuine. There were two attesting witnesses, one of whom was called and testified to the signature, and said that the release was signed at the plaintiff's house. The same party called witnesses acquainted with the handwriting of the supposed signer who testified to their belief that it was genuine. The other side called witnesses who testi-

fied that the parties to the instrument were not, and could not have been, at the place of signature at the time of the date of the instrument. It did not, however, appear positively that the date was not inserted prior to the time of the alleged signing. They also called persons familiar with the handwriting, who testified against its genuineness. The other attesting witness was not called by the party relying upon the release, nor was any reason given for not calling him. The verdict established the release. It was set aside, not on the ground that it was unjustifiable on the evidence before the jury, but because the party setting up the release might have called the other attesting witness; and, in such a state of the evidence, there ought to be a new trial in order that the available direct testimony might be produced. Yet in that case the jury might and should have weighed the fact of the non-production of that witness as bearing against the party setting up the release.

In the case now before me, one question put in issue was whether the goods had been examined as prescribed in the 67th section of the statute of 1799, c. 22 [1 Stat. 677]. The government held the affirmative, and to maintain it called four witnesses, a custom-house officer and three merchants. The officer and one of the merchants testified in general terms that they all four went to the place where these bags were deposited, and there made an examination of them, but they did not describe the manner of that examination. The next merchant called went one step further and said that the bags were laid out in rows, and that the examination was made by passing along by the several rows. The other merchant, being the one last called, testified that there were twelve or thirteen rows of bags, and that he examined only a part of them. And thus the evidence was left without particular inquiry or description of the mode in which the examination was made. The fair inference to be drawn from this testimony was that there had been a division of labor, by each merchant taking a separate row, and examining the contents of every bag in that row; and thus every bag was examined by some one of the merchants, but not by two of them. This seemed to be the necessary conclusion from the testimony of the last two merchants, and entirely consistent with that of the other merchant and the officer, who both testified in general terms that all the bags were examined, without stating that any one of them was examined by two persons, or by the officer when any two of the merchants were in a situation to see any part of the contents thereof.

Upon recurring to the statute, I was of opinion that it required that each package should be examined by a custom-house officer in the presence of two merchants, and that, to constitute such presence, the merchants must be in such a situation as to be able to witness such examination, and to see and testify to a part at least of the contents of each package. In this view of the law, it seemed to me that the evidence of the examination was incomplete, and that a further statement as to the manner in which it was made was desirable. I thereupon stated my view of the requirements of the statute, and suggested to the counsel for the government that he might, if he saw fit, recall his witnesses to state fully the manner in which the examination of the packages was made. But neither of them was recalled. In charging the jury, I laid down the law as to the construction of the statute, as I have above stated it, and endeavored to make them comprehend it. I recapitulated the evidence respecting the examination, but did not deem it necessary to make any remarks upon it.

The jury returned a verdict for the government. This was unexpected. It seemed to me that they must have misunderstood or disregarded either the law or the evidence. There was no conflict of testimony. All the evidence came from the four witnesses introduced by the government, the custom-house officer, and three merchants selected by him. No one of them had detailed the manner of the examination so as to make it clear that it was such as the statute required, while one of them, at least, had made a statement from which it was to be inferred that it was not. All doubts and difficulties might have been removed by recalling these witnesses or a part of them. They must have well known their own mode of proceeding. It was not known to the claimants, they not being present. I think that this case not only comes within the authorities already cited, and the practice of courts previous to and at the time of the adoption of the constitution, but within the most restricted exercise of the power of granting new trials which has ever been known in our courts.

The question whether the examination of this merchandise was such as the statute requires, must be submitted to another jury. Under the second plea, the jury have found that the contents of the packages differed from the entry. I do not think it necessary that this or the other matters embraced by the verdict should again be tried; and the new trial will be granted upon such conditions that the contestation before the jury shall be confined to the mode in which the examination of this merchandise was made, saving, however, to the claimants the benefit of all exceptions which were taken to the rulings and instructions of the court.