**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis H. ERICKSON, Defendant-
Appellant.**

**No. 71-3040.**

United States Court of Appeals,
Ninth Circuit.

Jan. 19, 1973.

Edgar Paul Boyko (argued), Anchorage, Alaska, for defendant-appellant.

Peter M. Page, Asst. U. S. Atty. (argued), G. Kent Edwards, U. S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before MERRILL, DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Dennis Erickson appeals from a conviction in a jury trial of a violation of 18 U.S.C. § 2113(b). (Theft of money from a federally insured bank.)

On May 2, 1969, appellant was an employee of the Loomis Armored Car Service and delivered a shipment of currency from one branch of the National Bank of Alaska to another branch. The $20,000 shipment was made up of two bundles of 500 twenty-dollar bills. He signed a receipt for the shipment when he took possession of it and was given a receipt for its delivery to the branch bank employee in the cash vault of the branch. He made a second delivery to the same branch bank cash vault later the same day. There was minutely detailed testimony about what took place when the two deliveries were made. The testimony was not conclusive. In addition, there was a great deal of testimony about appellant's economic situation. It tended to show that he was a man with a family, living upon a modest income, having no significant savings, a diversity of installment payments and he was a regular borrower from the bank. In the spring of 1969 his fortunes seemed to turn rather dramatically for the better. He gave up some extra income producing jobs for Loomis. He had slacked off his airplane flying after his marriage in 1967 but took it up again in May of 1969. A loan for payment of a motorcycle in installments of $70.24 was liquidated by a payment of $669.65 on June 30. The Ford Motor Credit Corporation was paid $790.44 in seven $100 money orders and one for $90.44 on June 25. An installment loan from Household Finance Corporation payable at $58.28 per month was paid in full in June 1969 by a payment of $740.68 in cash. In June 1969, he purchased an $11,646.25 Winnebago Mobile Home making the $2,000 down payment with 100 twenty-dollar bills. In July he paid Montgomery Ward $673.48 to satisfy his installment account there. Appellant added to the list of expenditures developed by the government when he told of having sent his parents $200

on each of two occasions; that he bought a car paying $825 or $850 in cash and that he bought $300 worth of building materials for cash after May 1969.

In his own behalf appellant testified that during four years in the Air Force as an enlisted man his salary range was from $89 to $198 per month. He said that he supplemented this by various moonlighting jobs, but did not declare this for income tax purposes. He told about making payments on a car during this period but left the service with over $2,000 in cash savings which he kept in a tool box in the trunk of his car. At the time of his marriage in March of 1967 he was four or five thousand dollars in debt, but claimed to have accumulated $5,500 in cash which he kept in a paper bag in the attic of his house. Although he acknowledged that after his marriage, with a wife and growing family of three children, he could not save much, he testified that by May 1969 his cash increased to $6,700. His wife knew nothing about this money until he handed 100 twenty-dollar bills to the Winnebago dealer.

The defense developed evidence which it argued clearly showed the opportunities of others to have taken the money including a bank official. It appears to have been clearly established that appellant had an excellent reputation and credit rating with no prior record of any kind.

The case on this and other evidence was submitted to the jury which heard it and a verdict of guilty was returned. The court denied a motion for acquittal made at the end of the government's case and again at the end of the entire case. Its Memorandum of Decision and Order is reported in United States v. Erickson, 325 F.Supp. 712 (D.Alaska 1971).

The appellant brings to us a number of assignments of error, none of which we find of sufficient consequence to justify the invalidating of the jury verdict and the reversal of the judgment. The first of these is that appellant was denied due process because of a prejudicial pre-indictment delay. The right to a speedy trial guaranteed by the Sixth Amendment does not arise until a formal complaint is lodged. United States v. Halley, 431 F.2d 1180 (9th Cir. 1970), cert. denied, 401 U.S. 916, 91 S.Ct. 896, 27 L.Ed.2d 816 (1971) ; United States v. Snyder, 429 F.2d 1242 (9th Cir. 1970). No claim is made that the government did not proceed diligently after the indictment was returned. But there was a delay from the date of the loss on May 2, 1969, to the date of the indictment on May 22, 1970. It was this pre-indictment delay along with claimed prejudice to the appellant's rights, which Erickson argues violated his Fifth Amendment rights. In order to constitute a violation of due process, there must be such a delay as will result in actual prejudice to the conduct of the defense or it must appear that the delay was an intentional one for the purpose of gaining a tactical advantage over the defendant or to harass him. United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ; United States v. Bray, 442 F.2d 1064 (9th Cir. 1971) ; United States v. Golden, 436 F.2d 941 (8th Cir.), cert. denied, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971). No reliable evidence is pointed to in this record which would match that test. He contends that he had negotiated with one Ken Vogel, an airplane salesman, in 1968, to purchase a plane. At that time appellant states he offered a substantial amount of cash as a down payment. Vogel was contacted as a possible witness for appellant, but was unable to recollect the transaction. There was no assurance that he would have been any better able to recollect it six months or a year prior to the date of contact. The probative value of this rather tangential transaction on the fact sought to be proved makes its admissibility doubtful. Thus, the offer to make a cash down payment does not establish the source of the funds. Nor does the evidence show that the government intentionally or negligently delayed in their efforts to investigate. The trial court

found that the FBI conducted interviews and in some cases re-interviews of approximately 52 persons located in some five states. Erickson was interviewed on May 6, 1969, and after additional evidence was accumulated, he was again interviewed on September 25, 1969. On this occasion he was advised that he was a suspect and given the proper warnings. We do not find the delay unusual or unnecessary in view of the problems involved, nor for harassment purposes or to obtain a tactical advantage. United States v. Marion, *supra*. Appellant, when notified he was a suspect on September 25, some four and one-half months after the theft, could have immediately taken steps for his own protection in obtaining and preserving evidence. The trial court found that it was about eleven months after being notified that he was a suspect before he employed his first investigator.

The rulings on evidentiary matters raised by appellant have been reviewed. We find no clear errors and certainly none of any substance. At appellant's urging, the cross-examination of the government witness, DeMerrell, was read word for word. There was nothing "overly protective" of this witness by the court. Few objections were made by the government and counsel for the accused was given wide latitude in his examination. We find no error in the court's exercise of its discretion in rulings during cross-examination of this or other witnesses. Harries v. United States, 350 F.2d 231, 236 (9th Cir. 1965). The instructions were full and fair, and appellant's objections upon this ground are not well taken.

■ Objection was also made because the court conducted the *voir dire* examination of prospective jurors. Appellant does not complain that the court refused to make any particular inquiry that he proposed. Counsel reaches into an empty barrel. As he acknowledges, the development of the law in this regard has passed him by. Rule 24(a), Fed.R.Crim.P., permits the court to conduct this examination. Many districts expressly so provide. We have so held. Rodgers v. United States, 402 F.2d 830 (9th Cir. 1968); Hamer v. United States, 259 F.2d 274 (9th Cir. 1958), cert. denied, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed. 2d 577 (1959).[1]

An incidental point of "aggravation" mentioned by appellant is that the government did not comply with the trial court's directive to disclose exculpatory evidence as fully as it should have. Specifically, no disclosure was made that Mr. DeMerrell, a bank officer, had been observed carrying a "suspicious" box out of the vault at a crucial time of day on May 2. The box contained recently arrived fishing tackle which DeMerrell had purchased. The incident sniffs of considerable remoteness to be classified as exculpatory evidence. The box was examined. The witness who made the examination testified and counsel for appellant cross-examined on the point. The contention lacks merit.

■ Finally, complaint is made of the sufficiency of the evidence because it was in fact circumstantial. In any such case there must inevitably be a lurking concern that justice has found the right defendant. Much of the evidence has been detailed to illustrate those circumstances of guilt which pointed so strongly toward appellant. The jury heard it and more, too. The court carefully tried the case and weighed the evidence on the motions presented. We find that the standards of United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969), have been met and that the judgment must be affirmed.

Judgment affirmed.

---

1. See also, United States v. Anderson, 433 F.2d 856, 858 (8th Cir. 1970); American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial By Jury, Section 2.4.