**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Glenn Dale SEAWELL,
Defendant-Appellant.**

**No. 76–1369.**

United States Court of Appeals,
Ninth Circuit.

Feb. 11, 1977.

Rehearing and Rehearing En Banc
Denied March 21, 1977.

Anne Flower Cumings (argued), of Cumings & Jordan, San Francisco, Cal., for defendant-appellant.

Larry Edelman, Asst. U.S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and WRIGHT, Circuit Judges, and PALMIERI,* District Judge.

MERRILL, Circuit Judge:

The question presented is whether the giving of a second modified *Allen* charge,[1] in response to a jury's report of deadlock, has such coercive implications that it should, as a sound rule of practice, be prohibited. We conclude that it has.

Seawell was convicted for armed bank robbery and the use of a firearm in its commission. He was found to be one of three masked robbers and, specifically, the one who guarded the front door of the bank during the robbery. His trial lasted four and one-half days, from Monday to Friday, in the course of which the jury heard the testimony of twenty-two witnesses. There followed closing arguments and the court's instructions. The jury then deliberated for two hours on Friday afternoon before recessing for the weekend.

On Monday, two notes were sent to the judge after the jury had deliberated approximately one and one-half hours. The first note said, "[t]he jury is at a ten-to-two impasse. The two state that nothing we can say will convince them otherwise. What course of action should we now take?" The second note, received minutes later, asked that a certain witness's testimony be read. Assuming that the second note had superseded the first, the judge had the testimony reread and then indicated to counsel his intention to give a modified *Allen* charge if the jury remained unable to agree.

Ten minutes after resuming deliberations, the jury sent another note indicating

---

* Honorable Edmund L. Palmieri, Senior United States District Judge of the Southern District of New York, sitting by designation.

1. The original *Allen* charge resulted from language in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *See also*

*Kawakita v. United States,* 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249, *reh. denied,* 344 U.S. 850, 73 S.Ct. 5, 97 L.Ed. 660 (1952); *Lias v. United States,* 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505 (1931).

a ten-to-two deadlock, and a modified *Allen* charge was given.[2]   Approximately three and one-half hours later, after some intervening discussion between judge and jury,

2. The form of the *Allen* charge given was:
     "The Court wishes to suggest a few thoughts which you may desire to consider in your deliberations, along with the evidence in the case, and all the instructions previously given.
     This is an important case.   The trial has been expensive in time, and effort, and money, to both the defense and the prosecution.   If you should fail to agree on a verdict, the case is left open and undecided.   Like all cases it must be disposed of sometime.   There appears no reason to believe that another trial would not be costly to both sides.   Nor does there appear any reason to believe that the case can be tried again, by either side, better or more exhaustively than it has been tried before you.   Any future jurors must be selected in the same manner and from the same source from which you have been chosen.   So there appears no reason to believe that the case would ever be submitted to twelve men and women more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced on behalf of either side.
     Of course, these things suggest themselves, upon brief reflection, to all of us who sat through this trial.   The only reason they are mentioned now is because some of them may have escaped your attention, which must have been fully occupied up to this time in reviewing the evidence in the case.   They are matters which, along with other and perhaps more obvious ones, remind us how desirable it is that you unanimously agree upon a verdict.
     As stated in the instructions given at the time the case was submitted for your decision, you should not surrender your honest convictions as to the weight or the effect of evidence, solely because of the opinion of other jurors, or for the mere purpose of returning a verdict.
     However, it is your duty as jurors to consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.   Each of you must decide the case for yourself, but you should do so only after a consideration of the evidence in the case with your fellow jurors.   And in the course of your deliberations, you should not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.
     In order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and frankness, and with proper deference to and regard for the opinions of each other.   That is to say, in conferring together, each of you should pay due attention and respect to the view of others and listen to each others arguments with a disposition to reexamine your own views.

If much the greater number of you are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one, since it makes no effective impression upon the minds of so many equally honest, equally conscientious fellow jurors, who bear the same responsibility, serve under the same oath, and have heard the same evidence with, we may assume the same attention and equal desire to arrive at the truth.   On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought seriously to ask themselves again, and most thoughtfully whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors, and whether they should not distrust the weight and sufficiency of the evidence, which fails to convince the minds of several of their fellows beyond a reasonable doubt.
     You are not partisans, you are judges—judges of the facts.   Your sole interest here is to seek the truth from the evidence in the case.   You are the exclusive judges of the credibility of all the witnesses and the weight and effect of all the evidence.   In the performance of this high duty, you are at liberty to disregard all comments of both Court and counsel, including of course the remarks I am now making.
     Remember, at all times, that no juror is expected to yield a conscientious conviction he or she may have as to the weight and effect of the evidence.   But remember also that, after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict, if you can do so without violating your individual judgment and conscience.   Remember too, if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.
     In order to make a decision more practicable, the law imposes the burden of proof upon one party or the other, in all cases.   In the present case, the burden of proof is on the Government.
     Above all, keep constantly in mind that, unless your final conscientious appraisal of the evidence in the case clearly requires it, the accused should never be exposed to the risk of having to run twice the gauntlet of criminal prosecution;  and to endure a second time the mental, emotional, and financial strain of a criminal trial.
     You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in the case bearing upon the questions before you.
     You may be as leisurely in your deliberations as the occasion may require;  and you shall take all the time which you may feel is necessary.

the judge received another note from the jury which read in part:

"No amount of argument has persuaded their convictions, these are the others who do not agree with the majority of the jurors. We therefore submit to you that we are at an impasse and are not likely to change our minds until fatigue becomes a deciding factor which we believe is neither fair to the defendant or the people."

The court, after stating that the jury would not in any event have to deliberate later than 6:30 P.M. that night or beyond the point of fatigue, then reread the *Allen* charge. The jury retired at 4:10 P.M. and

> You may now retire and continue your deliberations in such manner as shall be determined by your good and conscientious judgment as reasonable men and women. The jury will be sent to deliberate."

3. *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177, 1184–88 (1971); *United States v. Fioravanti,* 412 F.2d 407, 417 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *United States v. Brown,* 411 F.2d 930, 934 (7th Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970). See also *Green v. United States,* 309 F.2d 852, 854 n.3 (5th Cir. 1962), but compare with *United States v. Bailey,* 468 F.2d 652 (5th Cir. 1972).

4. Many state courts have banned or restricted the use of the *Allen* charge on the basis of their supervisory powers. See e. g. *Fields v. State,* 487 P.2d 831, 836 (Alaska 1971); *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197, 200 (1959); *State v. Nicholson,* 315 So.2d 639, 641 (La. 1975); *State v. Martin,* 297 Minn. 359, 211 N.W.2d 765, 772 (1973); *State v. Randall,* 137 Mont. 534, 353 P.2d 1054, 1058 (1960); *State v. Marsh,* 260 Or. 416, 490 P.2d 491, 503 (1971); *Kersey v. State,* 525 S.W.2d 139, 144 (Tenn. 1975).

At least one state court has found the *Allen* charge violative of constitutional rights. *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299, 304 (1971).

See also *People v. Prim,* 53 Ill.2d 62, 289 N.E.2d 601, 609–10 (1972); *State v. White,* 285 A.2d 832, 838 (Me.1972); *State v. Garza,* 185 Neb. 445, 176 N.W.2d 664, 666 (1970); *Azbill v. State,* 88 Nev. 240, 495 P.2d 1064, 1069 (1972); *State v. Champagne,* 198 N.W.2d 218, 238 (N.D.1972); *State v. Ferguson,* 84 S.D. 605, 175 N.W.2d 57, 61 (1970).

5. *Sullivan v. United States,* 414 F.2d 714, 717–18 (9th Cir. 1969); *Dearinger v. United States,*

the guilty verdict was returned at 5:00 P.M. Timely objections were made by defense counsel.

■ Problems arising from the inherently coercive effect of the *Allen* charge have caused other courts of appeals[3] and state courts[4] to prohibit or to restrict severely its use. Nevertheless, the content,[5] timing[6] and circumstances surrounding[7] the *Allen* charges given here have been upheld by this circuit and we do not now undertake to re-examine those decisions. We have, however, recognized that even in its most acceptable form, the *Allen* charge "approaches the ultimate permissible limits." *Sullivan v. United States,* 414 F.2d 714, 716 (9th Cir. 1969). We conclude that permit-

378 F.2d 346, 347 n.2 (9th Cir. 1967); *Kawakita v. United States,* 190 F.2d 506, 521–28 (9th Cir.), aff'd, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249; reh. denied, 344 U.S. 850, 73 S.Ct. 5, 97 L.Ed. 660 (1952).

6. The timing of the *Allen* charge here was similar to that in *Dearinger v. United States,* 378 F.2d 346, 347 (9th Cir. 1967), where the jury received the case at 3:15 P.M. and the charge was given at 12:45 P.M. the following day, as well as that in *Walsh v. United States,* 371 F.2d 135, 136 (9th Cir. 1967), where the jury received the case at 11:55 A.M. and the charge was given at 5:45 P.M. the same day. See also *Sullivan v. United States,* 414 F.2d 714, 717 (9th Cir. 1969), where the *Allen* charge was given after approximately five and one-half hours of deliberations over two days. The *Sullivan* court, however, indicated that it was not deciding whether the timing was appropriate because the issue was not raised by defense counsel. *Id.* at 717 n.5. Cf. *United States v. Contreras,* 463 F.2d 773, 774 (9th Cir. 1972), where the *Allen* charge was premature when given on the second day of deliberations, but before there was an indication of deadlock.

7. The fact that the jury disclosed its exact numerical division has not, by itself, precluded the use of the *Allen* charge. *United States v. Williams,* 444 F.2d 108, 109 (9th Cir. 1971). Contra, *Mullin v. United States,* 123 U.S.App. D.C. 29, 356 F.2d 368, 370 (1966). It would, however, be reversible error for a trial judge to inquire into the numerical split of a jury before giving an *Allen* charge. *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926).

ting it to be given twice in a federal prosecution would be an unwarranted expansion of its use.

■ If the charge is to pass muster as instruction on the law there is little need to repeat it save at the jury's request. (Here, for example, it was repeated three and one-half hours after it was first given. Nothing had intervened to cause the jury to overlook what last had been said to them.) Repetition of the charge, together with rejection of the jury's second report of deadlock, is almost certain to convey the thought that by failing to come to an agreement—by once again reporting themselves at impasse—the jurors have acted contrary to the earlier instruction as that instruction was properly to be understood. ("Apparently you didn't listen to what I said before, so I'll repeat it.") Given a second time, not at the request of the jury but at the instance of the judge, the charge no longer serves as an instruction; no matter how it may be softened it becomes a lecture sounding in reproof.

■ Ordinarily, the general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). Pragmatic considerations weigh against the application of this test when an *Allen* charge is given more than once. A case-by-case determination would provide little, if any, guidance for a trial judge. Defendants would also face insurmountable difficulties in attempting to show prejudice. A single *Allen* charge, without more, stands at the brink of impermissible coercion. We believe that the protection of a defendant's right to an impartial jury compels a per se rule.[8] Such a rule is not at odds with prior decisions of this court[9] or other courts of appeals.[10] We conclude that as a sound rule of practice it is reversible error to repeat an *Allen* charge in a federal prosecution in this circuit after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction.[11]

8. A per se rule, such as the one we have adopted here, always poses the risk that it may sweep within its embrace cases which do not warrant its protection. We believe, however, that this "cost" of adopting a per se rule is outweighed by the importance of a defendant's right to an impartial jury trial and the insurmountable problems of proof and appellate review that a less definite rule would occasion.

9. In *Marsh v. Cupp,* 536 F.2d 1287 (9th Cir.), *cert. denied,* —— U.S. ——, 97 S.Ct. 494, 50 L.Ed.2d 590 (1976), the petitioner sought a writ of habeas corpus on the ground that it was error to give an *Allen* charge a second time. We affirmed the denial of the writ by the district court, *Marsh v. Cupp,* 392 F.Supp. 1060 (D.Or.1975). The holding of *Marsh* is not applicable to this case for two reasons. First, *Marsh* does not necessarily decide the propriety of giving the *Allen* charge twice. The *Marsh* opinion makes clear that defense counsel did not object when either of the *Allen* charges was given, and when counsel did move for a mistrial on the basis of the jury instructions, the *Allen* charges went unmentioned. 536 F.2d at 1291, 1292. Second, *Marsh* involved a habeas corpus proceeding, and thus the only question that could be before the court was the constitutionality of the *Allen* charges. When federal courts have prohibited the use of any supplemental *Allen* charge, however, they have done

so on the basis of their supervisory powers. Note, *The Allen Charge: Recurring Problems and Recent Developments,* 47 N.Y.U.L.Rev. 296, 301 (1972).

10. On those rare occasions when the use of two *Allen* charges has been upheld by other courts the second charge was at the request of the jury, *United States v. Kahaner,* 317 F.2d 459, 484 (2d Cir.), *cert. denied,* 375 U.S. 836, 84 S.Ct. 62, 73, 74, 11 L.Ed.2d 65 *reh. denied,* 375 U.S. 926, 982, 84 S.Ct. 263, 478, 11 L.Ed.2d 169, 429 (1963); *White v. United States,* 279 F.2d 740, 750 (4th Cir.), *cert. denied,* 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960); or the first charge was a part of the general jury instructions delivered before the jury had begun its deliberations and thus was not in response to a report of deadlock. *United States v. Washington,* 144 U.S.App.D.C. 338, 447 F.2d 308, 310 (1970). Moreover, the vitality of these decisions might seriously be questioned. The first two decisions were rendered well before federal courts of appeals began to prohibit the use of the *Allen* charge and the third decision no longer represents the law of its circuit. *See* cases cited at n.3.

11. We do not intimate that after one *Allen* charge has been given any indication of deadlock must be accepted without question. If an indication of deadlock is ambiguous and the

Since remand for new trial is necessary we deem it advisable to settle an additional question that may again present itself below. Appellant asserts that a delay in his indictment violated his due process guarantees. The robbery occurred on November 18, 1974, and Seawell was arrested December 4, 1974. Nevertheless, Seawell was not indicted until May 28, 1975, more than six months after the bank robbery and five and one-half months after his arrest.

In *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), the Supreme Court stated that:

" * * * the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."

We need not decide whether substantial prejudice and intentional delay are required in the disjunctive or conjunctive.[12] Appellant has not even attempted to argue that delay on the part of the United States was an intentional device and we reject his claims of prejudice. His defense was alibi; he claimed he was working at a gasoline station at the time of the robbery. Two witnesses testified that he was there that day but could not place him there at a time that would have made his alibi air-tight. Appellant argues that but for the delay the

memories of his witnesses would have been sharper, to his advantage, and that he himself might have remembered other witnesses.

█ The unsupported claim that memories of some witnesses and the defendant have dimmed does not constitute substantial prejudice in itself. Mere speculation cannot serve as the grounds for a finding of substantial prejudice. *See United States v. Griffin,* 464 F.2d 1352, 1354–55 (9th Cir. 1972), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 447, 34 L.Ed.2d 302 (1973); *cf. United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir. 1975), *cert. denied, Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 960, 48 L.Ed.2d 205 (1976). We conclude that appellant's due process claim based on a delayed indictment is without merit.

Reversed and remanded for a new trial.

EUGENE A. WRIGHT, Circuit Judge, concurring and dissenting:

I concur in that portion of the majority opinion which deals with the alleged preindictment delay. Appellant has shown neither an intentional device by the prosecution nor substantial prejudice.

With due respect to the views of the majority, I dissent from that portion of the opinion which holds that it was reversible error to repeat the so-called *Allen* charge under the circumstances of this case. I strongly disagree with the per se rule that is now adopted because I feel that it is an

---

trial judge has reasonable grounds to believe the jury is not in fact deadlocked, then the trial judge may take reasonable steps to assure that the jury is in fact deadlocked. This may include asking the jury to determine carefully whether they are deadlocked, and, if so, to communicate that fact to the trial judge unambiguously. The trial judge may not, however, repeat the *Allen* charge or ask minority jurors to reexamine their stand.

**12.** At times this court appears to have read the requirements of substantial prejudice and intentional delay as being conjunctive. *United States v. Cordova,* 537 F.2d 1073, 1076 (9th Cir. 1976); *United States v. Andros,* 484 F.2d 531, 533 (9th Cir. 1973). Other times, this court has

been as unclear as to whether the requirements are conjunctive or disjunctive. *United States v. Manning,* 509 F.2d 1230, 1234 (9th Cir. 1974), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975); *United States v. Griffin,* 464 F.2d 1352, 1354–55 (9th Cir. 1972), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 447, 34 L.Ed.2d 302 (1973). On still other occasions, this court has considered the requirements as being disjunctive. *United States v. Sand,* 541 F.2d 1370, 1373 (9th Cir. 1976); *United States v. Erickson,* 472 F.2d 505, 507 (9th Cir. 1973). This issue may soon be resolved by the Supreme Court. *See United States v. Lovasco,* 532 F.2d 59, 61 (8th Cir. 1976), *cert. granted,* 429 U.S. 884, 97 S.Ct. 233, 50 L.Ed.2d 164 (1976).

unwarranted intrusion into the area of trial court discretion.[1]

Consideration of the judge's role in trial proceedings convinces me that there was no coercion in this case. The trial judge has a duty "to guide the jury by appropriate legal criteria through the maze of facts before it . . . ." *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). This responsibility has been upon the judge from early times.

In 1901 the Supreme Court stated:

[T]he judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility.

*Patton v. Texas and Pacific Railway Company,* 179 U.S. 658, 660, 21 S.Ct. 275, 276, 45 L.Ed. 361 (1901).

---

1. I need not protract this discussion by referring to all of the writings on the *Allen* charge, but some reference should be made to studies by the American Bar Association. Its Standards Relating To The Function Of The Trial Judge, Approved Draft, 1972, § 5.12 provides:
   5.12 Assistance during jury deliberations.
   (a) The trial judge should provide assistance to the jury during deliberation by permitting materials to be taken to the jury room and responding to requests to review evidence and for additional instructions, under appropriate safeguards as provided in ABA Standards, Trial by Jury §§ 5.1, 5.2 and 5.3.
   (b) In dealing with what appears to be a deadlocked jury, the trial judge should avoid instructions which imply that a majority view is the correct one, by complying with ABA Standards, Trial by Jury § 5.4.
   Adopted by reference is § 5.4 of Standards Relating to Trial by Jury, Approved Draft, 1968, which reads:
   5.4 Length of deliberations; deadlocked jury.
   (a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:
   (i) that in order to return a verdict, each juror must agree thereto;
   (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
   (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
   (iv) that in the course of deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and
   (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
   (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their delibera-

tions and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
   (c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.
   The commentary to Section 5.4(a) includes an illustrative instruction, most of which was incorporated into the district judge's charge. Note 2, majority opinion.
   The commentary to Section 5.4(b) provides further enlightenment:
   This subsection of the standard is intended to make it clear that the trial judge may send the jury back for further deliberations notwithstanding the jury's indication to the court that it has been unable to agree. It is the general view that the court may send the jury back for additional deliberations even though the jury has indicated once, twice, or several times that it cannot agree or even after they have requested that they be discharged.

   .  .  .  .  .

   . . . The general rule is that the length of time a jury may be kept deliberating is a matter within the discretion of the trial judge, but abuse of that discretion requires reversal. The reasonableness of the deliberation period depends upon such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multiple defendants, and the jurors' statements to the court concerning the probability of agreement.
   These standards indicate that the trial court has great discretion in assisting jury deliberation and that any coercive effect can be avoided by giving the proper form to the *Allen* charge to the jurors before they retire to deliberate.

Indeed, the judge's duty to guide and direct the jury has been said to be an essential part of the right to trial by jury.[2] In *Capital Traction Co. v. Hof,* 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899), the Court noted:

> The Constitution secures a trial by jury, without defining what that trial is. We are left to the common law to learn what it is that is secured. [When the Constitution was adopted the] trial by jury was . . . a trial of an issue of fact by twelve men, under the direction and superintendence of the court. *This direction and superintendence was an essential part of the trial.*

*Id.* at 15–16, 19 S.Ct. at 586, *quoting* from *United States v. Bags of Merchandise* (1863), 2 Sprague, 85–88. (Emphasis added.) As stated in Devitt, E. & Blackmar, C., 1 *Federal Jury Practice and Instructions* § 5.01 at 95 (1970): "In the last analysis, [the trial judge] must guide."

This is the duty the trial judge performed in this case. Appellant's trial lasted several days and the jurors were confronted with the testimony of 22 witnesses and a case built entirely on circumstantial evidence. It was the trial judge's "duty to guide, direct and assist the jury toward an intelligent understanding of the legal and factual issues . . ." *Elbel v. United States,* 364 F.2d 127, 134 (10th Cir. 1966), *cert. denied,* 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550 (1967). It was also "his inescapable duty to guide and assist them in their search for truth . . . [t]he paramount consideration [being], of course, that the jury be given to understand that they

should not compromise their conscientious convictions on the facts." *Id.* at 136.[3]

The judge in this case did not unreasonably undertake to fulfill this duty. He believed that a second *Allen* charge would help the jury arrive at a fair and impartial verdict. In the event that he had misjudged them, however, he was careful to note before giving the charge:

> I remind you that it is not my practice to require a jury to deliberate beyond the point of fatigue, you do not have to deliberate any further than six-thirty tonight. If you're not able to arrive at a verdict, then we'll not go further tonight and you'll simply not have to.

[Reporter's Transcript at 751.]

Additionally, within the *Allen* charge itself was the language:

> Remember, at all times, that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence.

[Reporter's Transcript at 754.] Thus, no attempt was made to compromise the jurors' conscientious convictions.

Other indicia aside from the judge's conduct also indicate that the giving of the second charge was not coercive. Notably, the jury deliberated another 50 minutes after the second charge before returning a verdict. In other cases, the return of a verdict within a shorter time after a single *Allen* charge has been found not coercive. *Bryan v. Wainwright,* 511 F.2d 644, 646 (5th Cir.), *cert. denied,* 423 U.S. 837, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975) (17 minutes); *United States v. Stollings,* 501 F.2d 954, 956 (4th Cir. 1974) (30 minutes); *United States v.*

---

**2.** It should also be noted that a defendant has a "valued right to have this trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). This right should be balanced by the trial judge against society's interest in just judgments and the conservation of judicial resources.

**3.** Commentators recognized that it is a fine line that a judge must walk. "An overly active judge may give the appearance of a meddler; but equally, a passive and quiescent trial judge may give the appearance of indifference." Silverman, "The Trial Judge: Pilot, Participant, or

Umpire?" 11 Alberta L.Rev. 40, 62 (1973). Perhaps it is well summed up in the following quotation:

> The trial judge can be a pilot who guides the trial along sedate, orderly lines within the confines of the rules of evidence and the applicable law. He is certainly more than an umpire, watching the sporting-theory of litigation in action; and he is less than a participant in that he should not enter into the fray of combat nor take on the mantle of counsel. *Id.* at 63–64 (footnote omitted).

*Hynes,* 424 F.2d 754, 757 (2nd Cir.), *cert. denied,* 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970) (5 minutes).

Nor was the total time of jury deliberation, approximately eight and one-half hours, so disproportionate to the task before the jury as to require this court to find that it was an abuse of discretion not to find the jury "hopelessly deadlocked," and to declare a mistrial. As stated in *United States v. Goldstein,* 479 F.2d 1061, 1069 (2nd Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973), the time needed to reach a verdict is a determination "best left to a trial judge" and "difficult to gauge . . . by appellate judges on a cold record."

Although it has been observed that the law generally attempts to protect juries from coercive influences,[4] I cannot agree that the actions of the judge in this case were coercive or constituted an abuse of discretion.[5]

In a recent case note dealing with the giving of the *Allen* charge in a Louisiana state case, it was concluded: .

It is submitted that in view of the split among the circuit courts, a decision by the Supreme Court would be appropriate.

Note, 22 Loyola L.Rev. 667, 675 (1976).

I join in that observation.

---

**4.** *See, e. g., Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (pre-trial publicity); *Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923) (mob dominated trial).

**5.** As a further refinement, I suggest that the *Allen* charge be given in writing along with the other basic instructions and that all instructions accompany the jurors to the jury room. *See United States v. Miller,* 546 F.2d 320, at

324, n.3 (9th Cir. 1976). This procedure should avoid the necessity to give the entire charge orally at a later point in the deliberations.

Additionally, trial judges might consider, in lieu of supplemental instructions, suspending jury deliberations for a time to alleviate juror tension. After a rest, or possibly a good night's sleep, jurors could return to their deliberations refreshed.