**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William ARIAS, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Erwin GONZALEZ,
Defendant–Appellant.**

**Nos. 89–50612, 89–50619.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1990.

Decided Jan. 22, 1991.

Donald M. Re, Los Angeles, Cal., for defendant-appellant Arias.

James D. Riddet, Santa Ana, Cal., for defendant-appellant Gonzalez.

Mark A. Byrne, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before NORRIS, HALL and THOMPSON, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Defendants-appellants Arias and Gonzalez appeal the district court's order denying their motions to suppress evidence obtained from searches of a Chrysler automobile and a house. Arias also appeals the portion of the district court's order holding that there was probable cause for law enforcement officers to arrest him. We affirm.[1]

I

In early 1987, in the course of a money laundering investigation, the Drug Enforcement Administration (DEA) received information from a confidential informant that Fernando Andrade was involved in cocaine trafficking. On February 7, 1989, the informant received a telephone call from Fernando telling him that Fernando and his brother Gabriel would be coming to Los Angeles the next day to sell the informant 20 kilos of cocaine. After meeting the brothers at the Orange County Airport, Fernando told the informant that the cocaine would be available the following day, and asked the informant to provide him and his brother with a "load" car that would be used to load, transport and deliver the drugs.

The next morning, the informant drove to the brothers' hotel and gave them the "load" car, which had been furnished by law enforcement authorities. After agreeing to meet later that day, the brothers drove off in the car, under police surveil-

lance. After a stop at another hotel, where Fernando exited the car, went to the second floor and returned, the brothers parked in the restaurant lot and walked away from the car.

At that point, appellant Arias got into the car and drove away, without making any contact with the Andrades. Arias drove the car in a way described by surveillance officers as evincing an attempt to avoid detection. Surveillance officers followed Arias to a residence at 774 Russell Avenue. He entered a garage door which had been electronically-opened, and which closed behind him. Shortly thereafter the door reopened and Arias drove away in the same car. Arias drove to a liquor store, parked the car in the store's lot, and went inside. The Andrades then walked into the lot, entered the car and attempted to drive away.

At that point DEA and other officers detained Arias and the Andrades. A narcotics-sniffing dog was brought in and reacted positively to the trunk of the car. The officers opened the trunk and the dog then alerted to the two boxes contained therein, ripping open one of them. The officers opened the boxes and found 20 kilos of cocaine, 10 kilos in each box.

Arias waived his *Miranda* rights and told officers that a friend of his named "Edwin" was at the Russell Street address. Officers who had been surveilling the house since Arias' visit there were informed of this information. Torrance police officers knocked at the door of the house, and announced their presence in English and Spanish. After a wait the duration of which is unclear, they forced their way into the house, and found defendant Gonzalez crouching behind a washing machine. After conducting a protective sweep of the premises, the officers secured and executed a search warrant. They found, among other things, 350 kilograms inside the house and in a truck parked in the adjacent garage.

---

**1.** Unlike the district court, we assume, without deciding, that at least one appellant had stand-  ing to challenge the search of the automobile.

Appellants attempted to suppress the evidence taken from the car and the house. At the suppression hearing, Arias testified that he did not own the cocaine, but merely had been employed to load it into the car and deliver it. Gonzalez testified he lived at the Russell Street address and was to be paid by Arias to load the cocaine into cars. He also denied ownership of the drugs.

The district court denied the suppression motions, and ruled, *inter alia,* as follows: that Arias and Gonzalez did not have standing to contest the search of the car; that the officers had probable cause to arrest Arias; that the officers were justified in searching the car and the boxes contained therein pursuant to the "automobile exception" to the Fourth Amendment's warrant requirement; that the protective sweep of the house was proper; and that the warrant to search the house was proper, even though it contained the mistaken information that an officer who had searched the car had stated that he saw white powder after the narcotics dog ripped into one of the boxes. Appellants appeal these rulings.

## II

Appellants mount two attacks on the search of the automobile, and specifically of the boxes found in its trunk. First, they argue that there was not probable cause to support the warrantless stop and search of the car. Second, assuming *arguendo* that such probable cause existed, appellants argue that a separate search warrant was constitutionally required to search the closed boxes the officers found in the trunk.

We review *de novo* a trial court's determination of the existence of probable cause, except for the underlying facts, which we review for clear error. *United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). We consider appellants' two arguments in turn.

### A

■ All the parties agree that "[p]robable cause to search is evaluated in light of the totality of the circumstances and is found to exist if there is a fair probability that contraband or other evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The facts found by the district court trace a pattern of suspicious activity consistent with a drug transaction, carried out either by individuals who had explicitly agreed to sell drugs to a government informant, or by appellants, who worked for those individuals. We hold that these facts, when taken together, suffice to raise probable cause. The information provided by the informant had proven accurate, and a known drug dealer had made contact with the informant and proceeded to act in a highly suspicious manner consistent with consummating a drug transaction.

### B

■ Appellants also argue that, even if the officers had probable cause to stop and search the car without a warrant, they were required to obtain a warrant to search the closed boxes found in the trunk. The district court ruled that the search of the boxes was legal, under the "automobile exception" to the Fourth Amendment's warrant requirement, as interpreted in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

We agree with the district court that *Ross'* interpretation of the "automobile exception" to the Fourth Amendment's warrant requirement controls here. As our court has recognized, "if 'probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'" *United States v. Salazar,* 805 F.2d 1394, 1397 (9th Cir.1986) (quoting *Ross,* 456 U.S. at 825, 102 S.Ct. at 2173). In *Salazar* our court distinguished *Ross,* holding that "[w]here, prior to a search, officers have probable cause to believe that a specific closed container holds contraband ... they must obtain a search warrant before opening it, even though it is located in an automobile."

805 F.2d at 1397. The key fact distinguishing *Ross* from *Salazar* is that in the latter case the police had focused from the start on the container, observing its progress from the hands of known drug traffickers into Salazar's hands, and thence into the automobile, while in *Ross* the police had no knowledge of a specific container, but rather only a generalized interest in the entire automobile.

In our case appellants argue that the officers' interest was "focused" on the boxes, in part because the police were looking for 20 kilograms of cocaine, and each of the two boxes was large enough to hold 10–15 kilograms of cocaine.[2] This argument misconstrues the focus of the analysis engaged in by the Supreme Court in *Ross* and our court in *Salazar.* Both of these cases were decided, consistently, based on the focus of the police interest before the search began. *See Salazar,* 805 F.2d at 1397 ("The Supreme Court has distinguished between searches of containers found in a car based upon probable cause that a specific container placed in a car contains contraband, and searches based upon a generalized belief that a car contains contraband somewhere inside. In the latter case, the entire vehicle including closed containers found therein may be searched to the same extent as if a magistrate had issued a warrant based on the probable cause relied upon by the officers. *Ross,* 456 U.S. at 823, 102 S.Ct. at 2172. Where, *prior to a search,* officers have probable cause to believe that a specific closed container holds contraband, however, they must obtain a search warrant before opening it, even though it is located in an automobile.") (emphasis added).

Thus, while at first blush the facts of our case might appear to fall into a middle ground between *Ross* and *Salazar,* upon reflection we believe that our court's reasoning in *Salazar* compels us to hold that the warrantless search of the boxes found in the trunk was proper, as the police acted not upon a belief that a specific container

within the car contained contraband, but rather "upon a generalized belief that [the] car contain[ed] contraband somewhere inside." *Salazar,* 805 F.2d at 1397.

### III

■ We also hold that there was probable cause to arrest appellant Arias. As noted above, a trial court's determination of the existence of probable cause is subject to *de novo* review, except for the underlying facts, which are subject to review for clear error. *United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990).

Taken individually, none of the facts found by the district court may by itself justify an arrest. However, when taken together, the facts found by the district court meet the standard our court has set forth for warrantless arrests:

> Arresting officers have probable cause to make warrantless arrests if, at the moment of the arrest, facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.

*United States v. Rodriguez,* 869 F.2d 479, 482 (9th Cir.1989). We hold that appellant Arias' link to the Andrades, individuals reliably identified as drug dealers, his suspicious driving and interaction with the Andrades in exchanging the car, and the informant's credible warning that a drug transaction was to take place, together established probable cause. *See also United States v. Casimiro-Benitez,* 533 F.2d 1121, 1123 (9th Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 329, 50 L.Ed.2d 295 (1976) (courts must apply probable cause standard while considering all facts known to officers and all reasonable inferences which could be drawn therefrom; immaterial that each circumstance considered individually may be consistent with innocent behavior) (citations omitted).

---

**2.** The evidence indicates conclusively that the police first became aware of the boxes' existence upon opening the trunk; *i.e.,* they had not previously focused on them as suspect containers.

## IV

■ Appellants argue that the officers' warrantless entry into the Russell Street house violated 18 U.S.C. § 3109, the "knock and notice" statute.[3] Our court reviews *de novo* a trial court's determination of the validity of a protective sweep, including compliance with the "knock and notice" requirement. *United States v. McConney*, 728 F.2d 1195, 1204-05 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

We hold that the facts of this case establish at least "mild exigency," which we have held to be sufficient to justify simultaneous entry when that can be accomplished without physical destruction of property. *See id.* at 1206. "Exigency has been defined as those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. Alfonso*, 759 F.2d 728, 742 (9th Cir.1985).

In our case, the officers had information suggesting the house was a "stash" house used to store cocaine. The officer in charge of the entry stated he feared the occupants (appellant Arias had said someone was at the house) might be destroying evidence or arming themselves. This last fear also raised a concern for the safety of the officers, and of bystanders in the residential neighborhood surrounding the house. This evidence establishes a degree of exigency sufficient to affirm the validity of the warrantless entry.

## V

■ Finally, appellants argue that the search warrant for the house was not sup-ported by probable cause. As noted above, a trial court's determination of the existence of probable cause is subject to *de novo* review, except for the underlying facts, which are subject to review for clear error. *Hoyos*, 892 F.2d at 1392. In addition to the evidence we cited in holding that probable cause existed to arrest appellant Arias, the search warrant for the house was also supported by the positive results of the dog sniff conducted on the boxes in the trunk of the automobile. We therefore hold that probable cause existed to support the search of the house.[4]

AFFIRMED.

---

**3.** The statute reads as follows:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

**4.** We hold that this evidence is sufficient without considering the mistaken statement in the search warrant affidavit that an officer present at the automobile search observed white powder in the box torn open by one of the dogs conducting the drug sniff.