960 F.2d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio ROJAS-GUZMAN, Defendant-Appellant.
 No. 90-50643.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1992.*
Decided April 15, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Antonio Rojas-Guzman appeals his conviction for possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). Rojas contends that the 30 ounces of Mexican "tar" heroin found on him should have been suppressed because the officers lacked probable cause to arrest him. We disagree and affirm his conviction.
 
 FACTS
 
 3
 On the morning of October 25, 1988, a confidential informant telephoned Eduardo Benjumea and negotiated with Benjumea to buy two kilograms of heroin. The informant called Benjumea at the behest of Ron Pierro, a DEA agent with considerable experience in investigating Mexican heroin traffickers. Working undercover, Pierro earlier had negotiated (but apparently not consummated) a purchase of five to ten kilograms of heroin from Benjumea.
 
 
 4
 That same day, the informant met with Benjumea at Benjumea's home. Benjumea told the informant that he had only one kilogram of heroin, but that an associate of his was seeking another kilogram. Benjumea gave the informant two ounces of "tar" heroin as a sample of his heroin's purity and asked the informant to call him in a couple of hours. The informant left Benjumea's house and handed the heroin over to Pierro.
 
 
 5
 There followed a fruitless afternoon of negotiations. Benjumea could not produce the full amount of heroin. The next day, October 26th, the informant again phoned Benjumea on Pierro's instructions. Another meeting was arranged. Benjumea was to deliver 10 ounces of heroin and promised a subsequent delivery of 20 ounces. That afternoon, surveilling DEA agents saw Rojas' silver Buick Regal in front of Benjumea's house. A few minutes later, Benjumea drove from his house in one car and Rojas followed in his Buick.
 
 
 6
 Benjumea arrived at a fast-food restaurant to meet the informant. Rojas stopped in the parking lot of a neighboring restaurant and waited, watching Benjumea all the while. After meeting with the informant, Benjumea left to fetch the entire 30 ounces of heroin. Rojas followed Benjumea. Surveilling agents followed them both. Benjumea returned home and Rojas arrived there one minute later.
 
 
 7
 A short while later, Benjumea met again with the informant at the restaurant; drove the informant back to Benjumea's house; showed him the 30 ounces of heroin; and dropped the informant back again at the restaurant. Rojas left Benjumea's house just after Benjumea and the informant. He was wearing a black leather jacket and there was a bulge under the jacket near his right arm pit. Rojas drove to another fast-food restaurant across the street from the first two, where Benjumea was returning the informant. Pierro instructed his agents to arrest Rojas as he sat in his car. The officers approached Rojas' car. Rojas tried to throw his jacket from the car, but it caught the passenger door and fell into the passenger seat. The officers arrested Rojas, examined the jacket and found about 30 ounces of Mexican "tar" heroin in the sleeve of the jacket.
 
 
 8
 In a pretrial motion, Rojas claimed that the officers lacked probable cause to arrest him and asked that the fruits of that arrest be suppressed. The court held a suppression hearing on July 11, 1990. Rojas testified in his own defense. Pierro and other prosecution witnesses also testified. After considering all the evidence, the court denied Rojas' suppression motion, finding probable cause for the arrest and listing the many factors that contributed to that finding. The court specifically found that Rojas' testimony lacked credibility. Rojas subsequently was convicted in a jury trial on September 12, 1990. He was sentenced to 97 months in prison, the minimum allowed under the Guidelines. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.
 
 ANALYSIS
 
 9
 A trial court's finding of probable cause is reviewed de novo, but the underlying factual findings are reviewed for clear error. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990).
 
 
 10
 Rojas' case is indistinguishable from United States v. Arias, 923 F.2d 1387 (9th Cir.), cert. denied, 112 S.Ct. 130 (1991). The Arias court held that a defendant's link to "individuals reliably identified as drug dealers, his suspicious driving ... and [an] informant's credible warning that a drug transaction was to take place, together establish probable cause" to arrest. Id. at 1390. Rojas was linked with Benjumea, a known drug dealer. According to Pierro, an experienced drug agent, Rojas shadowed Benjumea in an obvious (and thus inexpert) example of counter-surveillance driving, a common practice among drug dealers. Finally, there was clear and reliable proof from an informant-participant that drugs were obtained from Benjumea's house while Rojas was present there. The district court properly found probable cause and properly denied Rojas' suppression motion.
 
 
 11
 Rojas' conviction is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3