**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alphonse CUOZZO, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Frank STELLA, Jr.,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karin Susan MONARI, Defendant–
Appellant.**

Nos. 91–10064, 91–10107, 91–10108.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1991.

Decided April 27, 1992.

John C. Lambrose, Chief Asst. Federal Public Defender, Las Vegas, Nev., for defendant-appellant Alphonse Cuozzo.

Stephen Stein, Las Vegas, Nev., for defendant-appellant Robert Frank Stella, Jr.

Thomas F. Pitaro, Las Vegas, Nev., for defendant-appellant Karin Susan Monari.

Jane Hawkins Shoemaker, Asst. U.S. Atty., Organized Crime Strike Force, Las Vegas, Nev., for plaintiff-appellee.

Before: POOLE, REINHARDT, and FERNANDEZ, Circuit Judges.

POOLE, Circuit Judge:

## I.

During the spring and summer of 1989, appellants Alphonse Cuozzo and Karin Susan Monari represented to potential borrowers that they could broker a loan of one million dollars or more to borrowers able to provide one percent of the loan in cash up front. Appellant Robert Frank Stella, Jr. joined this enterprise in August, 1989. On September 6 and 7, 1989, Cuozzo, Monari, and Stella (posing as an insurance broker under the name Anthony Mazzolo) met with the majority of borrowers at two different hotels in California, where the borrowers signed documents, made additional cash payments, and received promises that their loans would arrive within days. Since none of the money was ever received, an investigation was launched and Cuozzo, Monari, and Stella were subsequently indicted by a grand jury for conspiracy and fraud.

Following a jury trial, Cuozzo was found guilty of one count of conspiracy in viola-tion of 18 U.S.C. § 371, and thirteen counts of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2. Monari was convicted of one count of conspiracy, thirteen counts of wire fraud and aiding and abetting, and two counts of mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 and 2. Stella was convicted of three counts of wire fraud and aiding and abetting.

All three now appeal their convictions. Monari alleges error in the use of a prior conviction to impeach her during cross-examination. She also appeals the district court's decision to compel her to respond to questions regarding other allegedly fraudulent activities. All three appeal the district court's denial of their motions for severance. They also allege error in the district court's use of an *Allen*[1] charge. Stella appeals the district court's denial of a jury request for a review of his trial testimony. Finally, Cuozzo appeals the district court's denial of his motion for judgment of acquittal. We affirm.

## II.

Before testifying in her own defense, Monari moved *in limine* to prevent the introduction of her prior felony conviction for dealing in counterfeit obligations or securities in violation of 18 U.S.C. § 473. The court denied Monari's motion, finding impeachment permissible under Fed. R.Evid. 609(a)(2) since the conviction involved dishonesty or false statement. Monari then admitted the prior conviction during her own direct examination. The government used this admission to impeach her during cross-examination.

We review *de novo* the district court's evidentiary ruling. *Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 811 (9th Cir.1991). Monari argues that the evidence was improperly admitted, contending that conspiracy and aiding and abetting in dealing in counterfeit obligations or securities is not a crime involving dishonesty or false statement. She argues that the conviction could therefore not be admitted un-

---

1. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

der Rule 609(a)(2) unless the government first proved that it "rested on facts warranting the dishonesty or false statement description." *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (quoting *United States v. Smith,* 551 F.2d 348, 364 n. 28 (D.C.Cir.1976)). This argument, however, is not availing. In the first place, *Hayes* only required such a showing if the title of the offense under which the defendant was previously convicted "leaves room for doubt" concerning whether the crime involved dishonesty. *Id.* There is no room for doubt in this case, because we have previously held in this circuit that passing counterfeit money is a crime involving dishonesty and fraud. *United States v. Harris,* 738 F.2d 1068, 1073 (9th Cir.1984). It follows that a conviction for conspiracy and aiding and abetting the dealing of counterfeit obligations or securities likewise demonstrates a propensity towards testimonial dishonesty. *See United States v. Brashier,* 548 F.2d 1315, 1326–1327 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977) (prior conviction for conspiracy to issue unauthorized securities and mail fraud admissible under Rule 609(a)(2)). The trial judge did not err in allowing Monari to be impeached through her prior conviction.[2]

### III.

During cross-examination of Monari, the prosecution sought to develop her involvement in a previous similar fraud. The questioning was ultimately allowed under Fed.R.Evid. 404(b). The trial court compelled Monari to respond to the questions, as it held that Monari had waived her Fifth Amendment right against self-incrimination by taking the stand and testifying as to her intent. Monari contests this holding, as well as the admissibility of the evidence under Rule 404(b).

### A.

A defendant who testifies in her own defense waives her right against self-incrimination and subjects herself to cross-examination concerning "any matters reasonably related to the subject matter of [her] direct testimony." *United States v. Panza,* 612 F.2d 432, 436–437 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). "The scope of the defendant's waiver is coextensive with the scope of relevant cross-examination." *United States v. Black,* 767 F.2d 1334, 1341 (9th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985). Thus, a defendant may be found to have waived her right to refuse to testify regarding prior bad acts so long as the testimony is otherwise admissible under Fed.R.Evid. 403, and so long as it is being offered for a purpose reasonably related to a material issue raised in the defendant's testimony on direct examination.

In this case, Monari put her intent into issue during her testimony on direct examination. The government sought to question her regarding prior fraudulent activities in order to rebut Monari's claim that she lacked fraudulent intent. Thus, cross-examination was proper so long as the district court did not abuse its discretion in permitting the questioning under Rule 404(b). *United States v. Sarault,* 840 F.2d 1479, 1485 (9th Cir.1988).

---

**2.** The evidence of Monari's prior conviction was admitted, in the alternative, under Fed.R.Evid. 609(a)(1). Monari also argues that this was error, contending that the probative value of her prior conviction was outweighed by its prejudicial impact. Although we need not reach this argument, having found the evidence admissible under Rule 609(a)(2), the record makes it clear that the trial court correctly exercised its discretion. The court properly weighed (1) the impeachment value of the prior crime, (2) the temporal remoteness of the conviction, (3) the similarity between the past crime and the present charges, (4) the importance of the defendant's testimony, and (5) the centrality of the defendant's credibility. *See United States v. Browne,* 829 F.2d 760, 762–763 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). The court felt that while (3) and (4) militated against admission of the impeachment evidence, (1), (2) and (5) favored it, and thus ruled that the evidence would be admissible. We find no abuse of discretion in this evaluation. *United States v. Perkins,* 937 F.2d 1397, 1406 (9th Cir.1991).

## B.

Before a jury may infer criminal intent from a defendant's prior wrongful acts under Rule 404(b), sufficient evidence must exist for the jury to conclude that the defendant in fact committed the prior acts. *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir.1991); *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). Monari contends that the government failed to provide the jury with sufficient facts to reach this conclusion. We agree.

During the hearing on Monari's objection to the introduction of the Rule 404(b) evidence, the government represented to the court that it could show that Monari had previously participated in a scheme to defraud victims by promising loans conditioned on the receipt of fees in advance. The only evidence introduced concerning Monari's prior fraudulent dealings, however, was testimony elicited from her on cross-examination. Her testimony differed in several important respects from the representations made by the government to the court during the *in limine* hearing.[3] Our review of the record leads us to conclude that insufficient evidence was produced to allow a jury to find that Monari had acted with fraudulent intent in the past.

The government is correct in noting, however, that the burden was on Monari to move to strike the evidence when the government failed to satisfy its burden of proof. *Huddleston*, 485 U.S. at 690 n. 7, 108 S.Ct. at 1502 n. 7. Since she did not do so, we must review her claim for plain error. *United States v. Vaccaro*, 816 F.2d 443, 453 (9th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). We find none. Very little, if any, incriminating evidence was actually elicited from Monari during the questioning of which she complains. In addition, this questioning played a minor role in the cross-examination of Monari as a whole. Although the government sought to elicit some admissions of her involvement in prior similar conduct, its effort was without reward. She denied any such taint. In sum, we do not believe that this constituted "highly prejudicial error affecting substantial rights."[4] *United States v. Lopez-Cavasos*, 915 F.2d 474, 476 (9th Cir.1990).

## IV.

Stella and Monari argue that they were entitled to a separate trial from Cuozzo so that he could testify on their behalf.

## A.

We review the denial of a motion to sever for an abuse of discretion.[5] *Unit-*

---

3. It appears that the government was unable to prove the prior affair through extrinsic evidence. The "victims" had apparently become hostile to the government, prompting the government to abandon its plans to call them as witnesses.

4. Monari also argues that even if the evidence was admissible under Rule 404(b), it still should have been excluded as being more prejudicial than probative. The trial court did (contrary to Monari's claim) state on the record that it had weighed these considerations, and found the probative value to outweigh the prejudicial effect. While the court perhaps should have been more sceptical of the government's ability to prove Monari's prior wrongdoing, we do not believe that, in light of the government's offer of proof, the court abused its discretion in concluding that the evidence was admissible. *See Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501.

5. The government argues that Cuozzo and Monari have waived their severance motions by failing to renew them. As a general rule, we have

held a severance motion waived if not renewed at the close of evidence. *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1208 (9th Cir.1991). This rule is not, however, "an inflexible one; waiver may be absent when the motion accompanies the introduction of evidence deemed prejudicial and a renewal at the close of all evidence would constitute an unnecessary formality." *Id.* (quoting *United States v. Kaplan*, 554 F.2d 958, 965 (9th Cir.) (per curiam), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977)). In *Felix-Gutierrez* we explained that "[t]he guiding principle is whether the defendant diligently pursued the motion." 940 F.2d at 1208.

Here, the government concedes that Stella renewed his motion at the close of evidence. A reasonable reading of the record is, however, that the trial court understood Stella to be making the motion on behalf of all the defendants. Moreover, in light of the denial of Stella's motion, it may have been an "unnecessary formality" for Cuozzo and Monari to renew their motions. We therefore hold that under the circumstances of this case there was no waiver.

ed States v. Castro, 887 F.2d 988, 996 (9th Cir.1989). The party seeking reversal of the denial of a motion to sever bears the burden of proving that a joint trial causes such "clear," "manifest," or "undue" prejudice that the accused is denied a fair trial. Id. In considering a motion to sever based on the allegation that a codefendant will provide exculpatory testimony, the trial court must weigh several factors, including the good faith of the intent to have a codefendant testify, the probability that the testimony will materialize, the economy of a joint trial, the possible weight and credibility of the predicted testimony, and the degree to which the predicted testimony is exculpatory. United States v. Mariscal, 939 F.2d 884, 885 (9th Cir.1991).

Both Stella and Monari argue that because the theory of their defense was an absence of criminal intent, the only witness in a position to corroborate their defense was Cuozzo. See United States v. Seifert, 648 F.2d 557, 563–564 (9th Cir.1980). According to appellants, Cuozzo would have testified that Stella had no knowledge of any illegal activity, and that Monari was an innocent investor who lost money herself in the loan deals.

▮ In considering the factors outlined above, the district court adopted the magistrate judge's finding that "[t]he proffered testimony of defendant Alphonse Cuozzo[ ] lacks substance and is subject to substantial impeachment. Therefore, Cuozzo's testimony, if ever given, is of minimal value to the other defendants." In addition, the magistrate judge found that any prejudice to Monari caused by the absence of Cuozzo's testimony was reduced by the availability of other sources documenting her allegations that she was an innocent investor. It was also noted that Cuozzo's agreement to testify was based on his being tried first. See Mariscal, 939 F.2d at 886. As a result, the magistrate judge found no "significant prejudice" to Stella and Monari from the joint trial. We see no abuse of discretion in this holding.

### B.

▮ During trial, both Cuozzo and Stella moved for a severance from Monari, arguing that the incriminating evidence elicited from her on cross-examination prejudiced their defenses. In assessing the prejudice to a defendant from the "spillover" of incriminating evidence, the primary consideration is whether "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). A critical factor in this assessment is "the judge's diligence—or lack thereof—in instructing the jury on the purposes to which various strands of evidence may be put." United States v. Douglass, 780 F.2d 1472, 1479 (9th Cir.1986). The fact that the jury rendered selective verdicts is highly indicative of its ability to compartmentalize the evidence. United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir.), cert. denied sub nom. Forde v. United States, 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988).

▮ When the prosecution questioned Monari concerning her prior conviction, the trial court carefully instructed the jury to consider the testimony only as it related to Monari's credibility. Before the prosecution's inquiry into evidence of Monari's prior involvement in fraudulent activities, the court instructed the jury that the evidence was only relevant to Monari's guilt or innocence, that it was not admissible against Cuozzo and Stella, and that the jury had to limit its consideration of the testimony accordingly. In addition, the court made several limiting instructions in its final instructions to the jury. These included a reminder that Monari's prior conviction could not be used as evidence of any defendant's guilt, and a reminder that "[e]vidence that a defendant may have committed an act at one time or on one occasion ... may not be considered for any purpose against any other defendant." The jury did return selective verdicts, finding Monari guilty of two counts as to which Cuozzo was acquitted, and acquitting Stella of all but three counts. The risk of prejudicial "spillover"

was minimal, and we find no abuse of discretion in the court's denial of Stella's and Cuozzo's severance motions.

## V.

Following one-and-a-half days of deliberation, the jury notified the court that it felt unable to reach a verdict on any of the counts. The government requested that a modified *Allen* instruction be given to the jury in response. Appellants unanimously opposed the giving of an *Allen* instruction and requested that a mistrial be declared. The court declined to give an *Allen* instruction at that time. Instead, the court decided to query the jurors as to whether any progress was being made, and to give an *Allen* instruction in the event that the jury should send a second note of the same nature following further deliberation. The jury was returned for more deliberation at 12:54 p.m. Approximately one-and-a-half hours later, the jury sent the court another note stating that the jury was deadlocked, with a majority of the jurors "standing firm on their decisions."

Once again the government requested a modified *Allen* instruction, and the appellants unanimously moved for a mistrial. The court denied the motions for mistrial, deciding instead to again ask the jury the same questions, and to give an *Allen* instruction if no progress was being made. In response, the appellants requested that the court incorporate into the proposed *Allen* instruction a clause reminding the jury that guilt must be established beyond a reasonable doubt. This request was denied. When the jury made it clear that no progress was being made, that no verdict was possible, and that further deliberation would be of no avail, the court gave a modified *Allen* instruction.

The jury returned to deliberation and, by 5:00 p.m., sent another note to the court stating that progress was being made. The jury was dismissed for the evening, and deliberation recommenced the next morning. By 12:47 p.m. on the next day, the jury had reached its verdicts.

Appellants argue that questioning the jury to determine whether any progress was being made constituted the equivalent of an *Allen* charge. They argue that, as a consequence, the presentation of the *Allen* charge after twice asking the same questions was a repetition of the charge, and hence per se reversible error under *United States v. Seawell,* 550 F.2d 1159, 1162–1163 (9th Cir.1977). In the alternative, appellants argue that even if the asking of the questions was not an effectual *Allen* charge, asking them in conjunction with the charge was impermissibly coercive.

The question is whether the trial court's instructions to the jury constituted an abuse of discretion. *United States v. Wauneka,* 842 F.2d 1083, 1088 (9th Cir. 1988). As to the treatment of an *Allen* charge, we consider whether the instruction, taken in its context, had a coercive effect. *Id.*

■ The appellants are simply mistaken in arguing that the seven questions presented to the jury constituted an *Allen* charge. Rather than instructing the jurors to reconsider their opinions in order to reach a verdict, as appellants claim, the questions merely inquired whether progress was being made. Finding *per se* reversible error in this situation would not advance the policies behind the rule announced in *Seawell.* The charge, given after the questions were asked, still "serves as an instruction." *Seawell,* 550 F.2d at 1163. Indeed, the instruction as given in this case, far from being "a lecture sounding in reproof," *id.,* legitimately served to clarify the district court's purpose in returning the jury to deliberation despite their seeming inability to make progress.

■ Appellants also claim that coercion arose in giving the *Allen* instruction in view of the jury's repeated insistence that it had reached an impasse in deliberation. In assessing the coerciveness of a supplemental instruction, we look to the form of the jury charge, the period of deliberation following the charge, the total time of deliberation, and other indicia of coerciveness or pressure. *United States v. Foster,* 711 F.2d 871, 884 (9th Cir.1983), *cert. denied,*

465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

The only objection raised to the substance of the *Allen* charge as given was its failure to include an instruction on the burden of proof. The government correctly notes that the charge as given was merely an abbreviated form of the instruction approved in *United States v. Seawell*, 583 F.2d 416, 417 n. 2 (9th Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978), and that a repetition of the burden of proof instruction was unnecessary since it had been given numerous times throughout the instructions.

▓▓▓▓▓ Appellants point to the Eighth Circuit's decision in *Potter v. United States*, 691 F.2d 1275 (8th Cir.1982), which overturned a conviction based in part on the failure of the trial court's *Allen* instruction to refer to the burden of proof. *Id.* at 1280. While it is helpful for an *Allen* charge to include such ameliorative language, its lack does not itself necessarily require reversal. *See Sullivan v. United States*, 414 F.2d 714, 717–718 (9th Cir. 1969) (approving instructions which omitted a reminder of the government's burden of proof). Instead, the failure to remind jurors that the government bears the burden of proving guilt beyond a reasonable doubt is but one factor to be considered in assessing the coercive effect of the instruction as a whole. We note that the trial court had already amply instructed the jury on the burden of proof. Absent other factors indicative of coercion, we will not infer coercion from the failure to repeat such instructions.

▓▓▓ Appellants also complain that the short period of deliberation which followed

the giving of the charge demonstrates that the jury was coerced into rendering its verdict. *See United States v. Bonam*, 772 F.2d 1449, 1451 (9th Cir.1985). We disagree. Jury deliberation in this case was not of such short duration as to raise a suspicion of coercion. Nor was the total time of deliberation so disproportionate to the task before the jury as to suggest that the *Allen* charge coerced the jury into returning its verdict.[6] *See United States v. Beattie*, 613 F.2d 762, 766 (9th Cir.), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). Instead, the facts are indicative of a jury working carefully and progressing in its deliberation. Finally, the record does not reflect any other indicia of coerciveness which would lead us to conclude that the jury was pressured into returning its verdict.[7] To the contrary, the jury rendered selective verdicts in this case, thereby demonstrating their rational and independent review of the evidence. We find that no impermissible pressure was brought to bear on the jury.

## VI.

▓▓▓ During its deliberation, the jury requested the playback of audio tapes which had been introduced into evidence during the trial. This request was granted. The jury also requested to hear or see the transcripts of Stella's testimony. This request was denied.

"[A] trial court is given great latitude in deciding whether to reread testimony requested by the jury," *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir.), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). Stella nevertheless contends that the court abused its discre-

---

6. After eleven days of trial, and the examination of more than two dozen witnesses, the jury began deliberating in the afternoon of October 29, 1990, and deliberated for close to two days before the giving of the charge at 2:52 p.m. on October 31, 1991. The jury returned to deliberation at 2:56 p.m., and continued until 5:00 p.m. that evening, at which time they notified the court that progress was being made. Deliberation recommenced the next morning, and continued until 12:47 p.m. Thus, following the *Allen* charge, the jury deliberated for approximately six hours. We believe this was a sufficient period of time to allow the jury to reach a reasoned decision in this case.

7. Appellants argue that in light of the second "deadlock" note's statement that "the majority of the jurors were standing firm," the charge impermissibly focused on the holdout jurors. The note itself makes no reference to how the jurors stood on the merits of the verdict. Instead, the most natural reading of the note is that most jurors felt that further deliberation would not be helpful. *See Lowenfield v. Phelps*, 484 U.S. 231, 240, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988). There is therefore no reason to believe that the jurors in favor of acquittal felt that the charge was directed specifically at them.

tion by refusing to grant the jury's request. Stella argues that the denial of the request, in the context of the contemporaneous grant of the request for a playback of the government's audio tapes, emphasized the prosecution's evidence and constituted an improper comment on Stella's lack of credibility. It is true that a trial court, in deciding whether to allow the jury to review testimony, must "avoid undue emphasis on any single portion of the witness's testimony." *United States v. Nickell,* 883 F.2d 824, 829 (9th Cir.1989). The trial court in this case avoided placing such "undue emphasis" by refusing to permit the jury to review any witness testimony. The government's audio tapes were not testimony, however, and therefore were made available to jury for review like all other evidentiary exhibits. We see no rational way in which the jury could have construed the denial of its request to review Stella's testimony as a comment by the court on Stella's credibility.

### VII.

At the close of the government's case, the defendants moved for a judgment of acquittal under Fed.R.Crim.P. 29. The motion was granted with respect to seven of the counts. Cuozzo now appeals the denial of the motion with respect to the remaining counts, and argues that insufficient evidence was introduced to support them. In reviewing the denial of that motion, we must view the evidence in the light most favorable to the prosecution. *United States v. Olano,* 934 F.2d 1425, 1430 (9th Cir.1991).

Cuozzo fails to specify in what way the evidence was insufficient to support his conviction. Our own review of the evidence convinces us that a rational jury could have concluded that appellants were guilty beyond a reasonable doubt.

AFFIRMED.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.