47 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melesio NORIEGA-LOPEZ; Noel Guerrero-Rodriguez; Mario
Cardenas-Leon; Rodrigo Corrales-Ponce; and Juan de
Santiago-Valle, Defendants-Appellants.
 Nos. 94-10002, 94-10031, 94-10006, 94-10034, 94-10007.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Jan. 11, 1995.
Decided: Feb. 9, 1995.
 
 Before: ALDISERT,* GOODWIN, and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 These consolidated appeals involve the delivery of a large quantity of marijuana in Tucson. All appellants contend the agents lacked probable cause to arrest them; all but one challenge the validity of the Miranda waiver. They individually raise various other challenges to their convictions and sentences. We affirm.
 
 
 3
 The investigation began with an anonymous tip that a green Ford pickup truck, driven by two men, would cross the Mexican border west of the Sasabe port of entry at 5:30 a.m. on May 17, 1993. Three hundred kilograms of marijuana would be concealed beneath sacks of aluminum cans. The truck would travel on Highway 286 to Arivaca Road to Interstate 19 to 818 Nebraska Street. There, a third man would take the truck to an unknown location. United States Customs Agents and Tohono O'Odham Police Officers set up surveillance and confirmed these facts.
 
 
 4
 The third man, Juan de Santiago-Valle, drove the truck to 2201 West Ocelot Drive and backed into the garage. After he left, the sacks in the truck bed appeared lower. He drove a roundabout route, stopped at 1930 West Greenleaf, and returned the truck to the Nebraska house. On his way back to the Ocelot house, he used a pay phone. An hour later, Mario Cardenas-Leon and Rodrigo Corrales-Ponce arrived, then left with de Santiago-Valle. Agents arrested these three men a few blocks away. An agent overheard Corrales-Ponce tell Cardenas-Leon to say that the money was for purchasing clothes.
 
 
 5
 Meanwhile, the original occupants of the truck were arrested as they drove the truck into a car wash. These men, Noel Guerrero-Rodriguez and Fausto Nido-Bacasehuea, confessed that they were to be paid $2,000 each to take the marijuana to the Nebraska house.
 
 
 6
 De Santiago-Valle also confessed. He said that he owned the marijuana, that Cardenas-Leon and Corrales-Ponce were unaware of the marijuana, and that he had given Corrales-Ponce a pager so that he could contact him. Cardenas-Leon and Corrales-Ponce denied knowledge of the marijuana, denied being at the Ocelot house, and said they were in Tucson to buy clothes to resell in Mexico.
 
 
 7
 The agents obtained warrants to search the three houses. They found 847 pounds of marijuana, packaging equipment, scales, and drug ledgers, but very little furniture at the Ocelot house. As they searched the Nebraska house, Noriega-Lopez arrived and was arrested. He said the two men had brought him aluminum cans and that he knew them well but could not remember their names. He denied knowledge of the $14,000 the agents found in the bedroom.
 
 I. Probable Cause to Arrest
 
 8
 All five appellants challenge the district court's denial of the motion to suppress evidence seized and statements obtained as the result of their warrantless arrests.
 
 A. Guerrero-Rodriguez
 
 9
 At the time Guerrero-Rodriguez was arrested, agents had the information from the tip. Although the tip was from an anonymous caller, it detailed the type and quantity of drug, the timing and location of the border crossing, the description of the truck and number of occupants, the route to a specific address, and the changing of drivers. United States v. Fixen, 780 F.2d 1434, 1437 (9th Cir. 1986) (even an anonymous tip can support probable cause if the tip is richly detailed). Law enforcement officers, through surveillance, confirmed that the tip had accurately predicted future conduct. Illinois v. Gates, 462 U.S. 213, 245 (1983). Although the agents had not seen any marijuana before the arrest, because the tip proved accurate about other details, such as the description of the truck and its route, the agents were entitled to credit the information that the sacks concealed marijuana. Id. at 244. These facts constitute probable cause to believe that Guerrero-Rodriguez had transported marijuana into the United States. See United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir. 1990); Fixen, 780 F.2d at 1438.
 
 B. De Santiago-Valle
 
 10
 The factual support for probable cause to arrest de Santiago-Valle includes the same facts supporting Guerrero-Rodriguez's arrest.
 
 
 11
 De Santiago-Valle argues that the probable cause dissipated when one hour before his arrest the officers stopped the green truck and found only hay. This fact does not entirely dispel the suspicion because, based on their observation that the sacks in the truck bed appeared lower after de Santiago-Valle left the Ocelot house, the agents reasonably concluded that the marijuana had been unloaded there. Therefore, the district court did not err by denying de Santiago-Valle's motion.
 
 C. Cardenas-Leon and Corrales-Ponce
 
 12
 Cardenas-Leon and Corrales-Ponce agree that the agents had reason to believe that crime was afoot at the Ocelot house, but argue that probable cause did not extend to them.
 
 
 13
 The government showed by inference that de Santiago-Valle had driven the truck to the suspected stash house and paged Corrales-Ponce from a pay phone after he had unloaded the marijuana at the Ocelot house. Cf. Del Vizo, 918 F.2d at 826 (facts showed that after one defendant used a pay telephone the others immediately returned to the house). Cardenas-Leon and Corrales-Ponce arrived after the telephone call and remained at the house for thirty minutes. Shortly before the three men left together, de Santiago-Valle retrieved the mail in a manner that an agent testified was counter-surveillance activity.
 
 
 14
 In addition, Agent Badyl testified that only trusted members of the operation would be allowed at a stash house. Here, the participants arranged the delivery in a way that kept Guerrero-Rodriguez and Nido-Bacasehuea away from the Ocelot house. Based on their experience, therefore, the agents were entitled to find it significant that Cardenas-Leon and Corrales-Ponce arrived at that house. Finally, appellants' arrival after the delivery of the marijuana is conduct consistent with criminal activity, given that owners sometimes appear on the scene to check the merchandise. Id. (noting that some dealers hide until the deal is consummated so that they can claim to be innocent bystanders).
 
 D. Noriega-Lopez
 
 15
 By the time of Noriega-Lopez's arrest, the agents knew the facts described above; they had found 847 pounds of marijuana at the Ocelot house; and Guerrero-Rodriguez, de Santiago-Valle, and Nido-Bacasehuea had confessed their roles in the crime. Noriega-Lopez was entering a house that served as the staging area for the drug transportation. See United States v. Arias, 923 F.2d 1387, 1390 (9th Cir.), cert. denied, 112 S. Ct. 130 and 217 (1991). Accordingly, the evidence adequately supports his arrest.
 
 II. Waiver of Miranda Rights
 
 16
 Guerrero-Rodriguez, Cardenas-Leon, Corrales-Ponce, and de Santiago-Valle argue that the district court erred by failing to suppress their statements elicited during custodial interrogation. They argue that because the interrogating officer failed to ask if they wanted to waive their constitutional rights, the government did not secure a valid waiver.
 
 
 17
 Before the government is allowed to introduce evidence of a defendant's statement made in response to custodial interrogation, the government must show both that the defendant was informed of and waived the rights delineated in Miranda v. Arizona, 384 U.S. 436, 467-79 (1966). Terrovona v. Kincheloe, 912 F.2d 1176, 1180 (9th Cir. 1990), cert. denied, 499 U.S. 979 (1991).
 
 
 18
 A law enforcement officer does not have to recite the rights in the exact language contained in the Miranda opinion. California v. Prysock, 453 U.S. 355 (1981) (per curiam). We conclude that this flexibility reasonably extends to the language an officer uses to extract a waiver from the suspect. See Terrovona, 912 F.2d at 1180 (finding a valid implied waiver even though the arresting officer never asked suspect if he wanted to waive his rights). In this case, the government showed a valid waiver. The appellants answered "yes" to the question "are you willing to talk to me?" In addition, although Agent Badyl deliberately avoided the word "waive," the advice of rights form includes a similar word, the Spanish verb "ceder," which means "to cede." The Concise American Heritage Larousse Spanish Dictionary 54 (1989).
 
 
 19
 We reject the appellants' related argument that the agent's conscious decision to avoid the word "waiver" constituted the type of deceit necessary to invalidate a waiver. See United States v. Harrison, 34 F.3d 886, 890-92 (9th Cir. 1994).
 
 
 20
 III. Material Misstatements in Search Warrant Affidavit
 
 
 21
 Noriega-Lopez, Cardenas-Leon, Corrales-Ponce, and de Santiago-Valle argue that the district court erred by refusing to suppress the evidence seized pursuant to the three search warrants because the affidavit contained material misstatements. Because we find that probable cause to search existed independent of the misstatements, however, we conclude that the warrants were valid.
 
 
 22
 As a preliminary issue, the government contends that some appellants lack standing to challenge the searches of certain houses. Because no factual record was made and at least one appellant has standing as to each property, we assume that all have standing. United States v. Spilotro, 800 F.2d 959, 962-63 (9th Cir. 1986).
 
 
 23
 Evidence seized pursuant to a search warrant must be suppressed if a defendant shows that the supporting affidavit contains intentionally or recklessly false statements and the affidavit, purged of its inaccuracies, is insufficient to establish probable cause. United States v. Stanert, 762 F.2d 775, 780 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985).
 
 
 24
 The redacted affidavit described a tip about the importation of marijuana into Tucson and, although the tip was anonymous, it was fairly detailed and, as corroborated by independent investigation, accurately predicted future events. The agents saw bags which could have concealed contraband, which was consistent with the tipster's statement that the drugs would be hidden in the bed of the truck. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) ("Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location.").
 
 
 25
 Based on the experience of the agents, they fairly concluded that drugs had been unloaded at the Ocelot house when the green truck entered the closed garage and then left with a lighter load. United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) (a tip, counter-surveillance driving, beeper phone calls, a car switch, and officer's experience supported issuance of warrant to search house even though no drugs had been seen); Arias, 923 F.2d at 1388-90. Thus, the search of the Ocelot house was valid.
 
 
 26
 The Nebraska house had been specifically mentioned in the tip as the meeting place for the drivers. Guerrero-Rodriguez and Nido-Bacasehuea apparently waited there after de Santiago-Valle took the green truck. De Santiago-Vall left his own car there while he drove the green truck to the Ocelot house. He returned to the Nebraska house by a roundabout route and after stopping to use a pay phone. Based on these facts, the agents could reasonably conclude that evidence of the trafficking would be stored at the Nebraska house. Ocampo, 937 F.2d at 490 (when residence had been site of car switch and suspects had entered closed garage, probable cause to search existed).
 
 
 27
 Because de Santiago-Valle transported marijuana and entered the Greenleaf house, he was likely to keep evidence at his home. Angulo-Lopez, 791 F.2d at 1399 (probable cause existed to search the residence of an assistant to a drug trafficking operation because "a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's").
 
 
 28
 The district court did not err by denying the suppression motions; consequently, we reject de Santiago-Valle's related argument that the government committed misconduct by introducing at trial the fruits of the searches.
 
 IV. Severance
 
 29
 We reject the argument by Cardenas-Leon and Corrales-Ponce that the district court abused its discretion by denying their motion for separate trials based upon de Santiago-Valle's promise to testify that they did not know about the marijuana.
 
 
 30
 "When the reason for severance is the need for a codefendant's testimony, defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving party." United States v. Jenkins, 785 F.2d 1387, 1393 (9th Cir.), cert. denied, 479 U.S. 855 and 889 (1986). Defendant must show that the joint trial caused clear, manifest, or undue prejudice. United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.), cert. denied, 113 S. Ct. 475 (1992).
 
 
 31
 Although appellants appear to have met their burden of showing that de Santiago-Valle would testify because his attorney stated as much, and that the promised testimony would have supported Cardenas-Leon's and Corrales-Ponce's defense of lack of knowledge, United States v. Vigil, 561 F.2d 1316, 1317-18 (9th Cir. 1977) (per curiam), they have not established the level of prejudice required for a reversal. The jury heard the exculpatory statement when de Santiago-Valle's attorney elicited it from Agent Badyl. Cuozzo, 962 F.2d at 950 (prejudice from absence of co-defendant's testimony is diminished if other sources of information document the proffered testimony).
 
 
 32
 Even if separate trials had been ordered, the evidence establishing that Cardenas-Leon and Corrales-Ponce spent thirty minutes at an obvious stash house would have diluted the value of de Santiago-Valle's exculpatory testimony. Id. (joint trial did not significantly prejudice defendants because the co-defendant's exculpatory evidence could have been substantially impeached).
 
 V. Admission of Tip
 
 33
 Noriega-Lopez, Cardenas-Leon, and Corrales-Ponce argue that the district court erred by allowing Agent Sandoval to testify to the content of the anonymous tip.
 
 
 34
 An out-of-court statement offered to show the effect on the listener, rather than the truth of the matter asserted, is not hearsay. United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991), cert. denied, 112 S. Ct. 1598 (1992). To be admissible, such evidence must be relevant to an issue at trial. United States v. Dean, 980 F.2d 1286, 1288 (9th Cir. 1992).
 
 
 35
 Here, the testimony about the tip was not hearsay to the extent that it showed how the investigation began and why the agents went to certain locations. E.g., United States v. Cawley, 630 F.2d 1345, 1350 (9th Cir. 1980) (collecting cases in which agents were allowed to testify to statements by informants because they explained why the agents conducted the investigation). To the extent that the testimony had an impermissible hearsay aspect, the error was harmless. The district court instructed the jury on three occasions that the evidence was introduced for the limited purpose of explaining why the agents began the investigation. Payne, 944 F.2d at 1472; Cawley, 630 F.2d at 1350. The facts contained in the agent's testimony about the tip were duplicated by several agents' testimony that a truck drove to the Nebraska house, changed drivers, and continued to the Ocelot house where they later discovered marijuana. Payne, 944 F.2d at 1473.
 
 VI. Admission of Drug Ledgers
 
 36
 We reject the argument by Noriega-Lopez, Cardenas-Leon, Corrales-Ponce, and de Santiago-Valle that the district court abused it discretion by admitting evidence of drug ledgers found at the Ocelot house. When a drug ledger is introduced to show the type of activities carried out in the residence, it may be admitted as non-hearsay provided "there is a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice." United States v. Huguez-Ibarra, 954 F.2d 546, 552 (9th Cir. 1992). Here, the ledgers were relevant to show that the Ocelot house was a stash house. They were authenticated by "the nature of their contents and the fact that they corroborated the testimony of government agents regarding the suspected drug trafficking." Id. at 553. There was no unfair prejudice because other evidence showed the house was sparsely furnished and contained 847 pounds of marijuana, scales, and packaging equipment. In addition, the district court adequately cautioned the jury not to consider the ledger as proof of the amount of marijuana, but only to consider the agent's opinion that the paper was in fact a drug ledger. Id.
 
 VII. Admission of Expert Opinion Testimony
 
 37
 Cardenas-Leon and Corrales-Ponce argue that the court erred by allowing Agent Badyl to testify to his opinions about the truthfulness and feelings of de Santiago-Valle and the behavior of wholesale clothes buyers.
 
 
 38
 Badyl's opinion about the veracity of de Santiago-Valle's confession impugned the defendant's credibility and may not have been a proper subject for expert testimony. United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985) (an expert who testifies about credibility or believability of an individual invades the jury's province). Reversal, however, is not warranted. The agent was within bounds to testify that de Santiago-Valle was not the owner. United States v. Fleishman, 684 F.2d 1329, 1335-36 (9th Cir.) (agent may testify as an expert to defendant's role in criminal activity, for example, that he was a lookout), cert. denied, 459 U.S. 1044 (1982). The opinion only indirectly affected Cardenas-Leon and Corrales-Ponce because it bolstered the government's theory that they owned the marijuana. The district court extensively instructed the jury about the weight of expert opinion.
 
 
 39
 Agent Badyl's testimony that de Santiago-Valle was afraid was permissible because even lay witnesses are permitted to testify to the corporal appearance of another person. United States v. Mastberg, 503 F.2d 465, 470 (9th Cir. 1974) (agent can give his opinion that a person appeared nervous); Cole v. United States, 327 F.2d 360, 361 (9th Cir. 1964) (lay witness may give opinion that a person was distraught). The agent further stated his impression that Cardenas-Leon and Corrales-Ponce were the source of the fear. Even assuming that this testimony was improper, the comment was brief and was challenged when Badyl was asked whether de Santiago-Valle could have been afraid because he was under arrest. The court immediately intervened to state that it was the agent's opinion and later extensively instructed the jury on the use of opinion testimony.
 
 
 40
 The admission of the agent's opinion testimony about the customs of clothes buyers from Mexico does not require reversal. Even if Agent Badyl's marriage and friendships did not qualify him to testify about clothes buyers from Mexico, an expert's lack of particularized expertise goes to the weight of the testimony, not its admissibility. United States v. Garcia, 7 F.3d 885, 890 (9th Cir. 1993). The court instructed the jury that they were to give expert testimony the weight it was due.
 
 VIII. Sufficiency of the Evidence
 
 41
 Noriega-Lopez, Cardenas-Leon, and Corrales-Ponce challenge the sufficiency of the evidence to sustain their convictions for conspiracy to distribute and aiding and abetting the distribution of marijuana. We deem evidence sufficient to support a conviction unless no rational jury could find the elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the government. United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir. 1992).
 
 A. Cardenas-Leon and Corrales-Ponce
 
 42
 The evidence is sufficient to establish that Cardenas-Leon and Corrales-Ponce knowingly participated in the crime. The evidence supports a fair inference that de Santiago-Valle paged Corrales-Ponce to report that the marijuana arrived. For thirty minutes, Cardenas-Leon and Corrales-Ponce remained at a house containing little furniture, a noticeable odor of marijuana, and visible bundles of 847 pounds of marijuana. United States v. Martinez, 967 F.2d 1343, 1345-46 (9th Cir. 1992). An agent testified that only those intimately involved in the operation are permitted to know the location of the stash house. Thus, while Nido-Bacasehuea and Guerrero-Rodriguez were buffered from that knowledge by the change of drivers, Cardenas-Leon's and Corrales-Ponce's presence at the Ocelot house was significant.
 
 
 43
 The two men possessed a large amount of cash and de Santiago-Valle had given Corrales-Ponce a pager. United States v. Bernal, 719 F.2d 1475, 1478 (9th Cir. 1983). That the two men concocted a cover story for the money is incriminating and undermines their explanation about their reason for being in Tucson. United States v. Grayson, 597 F.2d 1225, 1229 (9th Cir.), cert. denied, 444 U.S. 873 and 875 (1979). Both men denied being at the Ocelot house, but the agents identified them as being at the house. The jury could infer that they lied, which provides circumstantial evidence of their consciousness of guilt. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327-28 (9th Cir. 1992).
 
 B. Noriega-Lopez
 
 44
 The evidence was sufficient to sustain the jury's verdict. The jury could reasonably conclude that Noriega-Lopez's house was the staging area for the crime because the drivers met there to change drivers and the sacks of cans used to conceal the marijuana were found there. Noriega-Lopez stored $14,000 in cash in his bedroom, which can be evidence of drug trafficking. Bernal, 719 F.2d at 1478. Noriega-Lopez first denied knowledge of the money, then said it was his wife's. The change of story suggests consciousness of guilt. Ramirez-Jiminez, 967 F.2d at 1327-28. Noriega-Lopez's explanation that the men in the green truck had stopped at his house to sell aluminum cans was entitled to disbelief because he said that he had known the two men for some time, but then could not remember their names. Grayson, 597 F.2d at 1229.
 
 IX. Disparity in Sentences
 
 45
 Noriega-Lopez challenges the disparity of his sentence, 72 months, with that of his five co-defendants, 60 months. Because the disparity in sentencing occurred as a result of the correct application of the Sentencing Guidelines, namely, the minor role adjustment, Noriega-Lopez's challenge fails. United States v. Hoy, 932 F.2d 1343, 1345 (9th Cir. 1991) (per curiam) ("a disparity in sentencing among codefendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the guidelines"); United States v. Carpenter, 914 F.2d 1131, 1136 (9th Cir. 1990) (rejecting claim of disparate sentencing when defendant failed to "show that his sentence was a result of incorrect or inadmissible information, or an incorrect application of the Sentencing Guidelines").
 
 
 46
 AFFIRMED.
 
 
 
 *
 Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit R. 36-3